IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES JOSEPH LYNCH, JR., CM,
Mother, and ZM, a minor,

      Petitioners,

vs.

CALIFORNIA COURT OF APPEAL,
THIRD DISTRICT, et al.,

      Respondents.[1]

No. CIV S-08-0041 MCE EFB P

FINDINGS & RECOMMENDATIONS

      This is a habeas corpus action for which petitioners have paid the filing fee. Petitioners are persons who allege that they are restrained of their liberty by an order of the California Court of Appeal for the Third District which imposed sanctions on petitioner Lynch and which affirmed the trial court's decision not to modify a custody order. They seek a writ of habeas corpus pursuant to 28 U.S.C. § 2241. However, the portion of the statute that petitioners

---

[1] Also named as respondents are the State Bar of California, Jay Allen-Eisen and J.M. The record reveals that Mr. Allen-Eisen represented J.M., the father of the minor child, in state court proceedings. All of the petitioners' allegations and all but one demand for relief are directed at the Third District Court of Appeal. One demand for relief is directed at the State Bar of California. It appears that petitioner has simply named a hodge-podge of respondents without seriously considering whether specific claims can be stated against specific defendants/respondents. Nonetheless, the gravamen of this case is a request to enjoin the state appellate court and the state bar. Accordingly, the court treats the state court and the state bar as the proper respondents.

1

apparently rely upon specifically apply to a person who is a prisoner. 28 U.S.C. § 2241(c). As discussed herein, the petitioners are not prisoners and section 2241(c) cannot support the petition here. Petitioners purport to challenge the judgment of a state court and for that reason the court construes the application as having been made under 28 U.S.C. § 2254. However, as explained below, they are not entitled to federal habeas relief.

**I.   Facts**

This is not the ordinary habeas petition, i.e., one filed by a prisoner seeking immediate or accelerated release. Rather, the petition involve a lawyer, petitioner Lynch, who represented petitioner "CM" in a custody dispute with her former husband, "JM," over their daughter, "ZM." The court gleans the facts from the allegations in the petition and the attachments thereto.

It appears that the parents were married at the time ZM was born, but later divorced. Pet., Attach. 1, at 20. A California court granted custody to the mother and supervised visitation to the father. *Id.* In 2002, the mother sought an order modifying the custody order on the ground that JM physically had abused her during their marriage. Pet., Attach. 1, at 10, 20. The trial court rejected the mother's arguments and refused to modify the custody order. Pet., Attach. 1, at 20. Petitioner Lynch represented the mother in the trial court and on appeal in the Third District Court of Appeal. Pet., at 2.[2] Lynch filed and served his opening appellate brief on counsel for JM, the appellee. Thereafter, appellee's counsel sent Lynch a letter asserting that the brief was frivolous, and requested that Lynch withdraw the appeal. Pet., Attach. 2, at 9.[3] The letter cautioned Lynch that if a responsive brief were required, counsel would move for sanctions against both Lynch and his client. *Id.* Petitioner Lynch did not withdraw the appeal.

---

[2] In February 2006, the minor child, ZM, suffered a bruise on her arm for which she was taken to a medical clinic. Pet., Attach. 2, at 2-3. The ensuing examination precipitated an investigation into whether JM had hit ZM. ZM and the father gave the same explanation of the injury, i.e., that ZM had fallen from a tree. They each consistently described the tree's location. *Id*. Investigators verified the existence and location of the tree and determined that the injury was consistent with falling from a tree and closed the case. *Id.*

[3] The letter is roughly the equivalent of a Rule 11 letter under Fed. R. Civ. P. 11.

As a result, the appellee incurred the expense of filing a response brief and defending against the appeal. The Third District Court of Appeals found that the appeal was frivolous and imposed sanctions on Lynch totaling $9,848.00. Pet., at 1. On June 29, 2006, Lynch filed a petition for review in the California Supreme Court.

On January 5, 2008, Lynch filed the instant petition, purportedly on behalf of himself, the mother, CM, and the minor child, ZM. He alleges the following claims: (1) that the Third District Court of Appeal, by affirming the trial court's judgment, illegally has confined and restrained ZM of her liberty; (2) that the Third District Court of Appeal acted in excess of its jurisdiction by holding Lynch in contempt of court; (3) that the Third District Court of Appeals subjected petitioner Lynch to cruel and unusual punishment by ordering him to pay a fine of $7,348 to the father, JM, and $2,500 to the clerk of the court; and, (4) that fining Lynch violated ZM's right of access to the courts to redress her grievance, i.e., a claim that simply restates the argument that it is not in her best interest to be supervised by her father. Petitioners seek an order directing the Third District Court of Appeal to show cause why the sanctions it imposed are a valid exercise of its powers; that the California State Bar be notified to take no action against petitioner pending further orders of this court; and that petitioners be discharged from the illegal abuse and restraint alleged in the petition.

**II.     Standards for Initial Review of Habeas Petitions**

A judge "entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Otherwise stated, "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court," the court must dismiss the petition. Rule 4, Rules Governing Section 2254 Cases. A district court must entertain a habeas petition "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties

of the United States." 28 U.S.C. § 2254(a). Any petition filed in the federal court must allege facts establishing subject-matter jurisdiction. *See* 28 U.S.C. § 2242 (petitioner shall allege facts about petitioner's commitment or detention, the name of the person having custody over him and by virtue of what claim or authority, if known).

As explained below, it plainly appears from the petition and exhibits that the petitioners are not entitled to the relief they seek. Thus, this action must be dismissed.

**III.    Analysis**

As noted, petitioners challenge the state appellate court's decision refusing to modify a custody order, holding petitioner Lynch in contempt of court and imposing monetary sanctions for the filing of a frivolous brief. Not only is habeas relief unavailable for challenging the state court's decision, but it is clear that this action is barred by the *Rooker-Feldman* doctrine.

**A. Habeas Corpus Jurisdiction: The "Custody" Requirement**

Counsel mistakenly asserts that this court has habeas corpus jurisdiction. He relies on two cases, neither of which supports the assertion. The first, *Scaggs v. Larsen*, 396 U.S. 1206 (1969), involved a military reservist held in active duty 17 months beyond his discharge date. *Scaggs*, 396 U.S. at 1206. There was no finding in *Scaggs* as to whether the petitioner was in "custody." However, the order presupposes as much. Justice Douglas, sitting in his capacity as Circuit Justice, directed that the petitioner be released on his own recognizance and from any obligations arising from his military service until his claim could be decided by the appellate court. *Id.*, at 1206, 1209. The second, *M.L.B. v. S.L.J.*, 519 U.S. 102, 107 (1996), has nothing whatsoever to do with habeas corpus. In that case, certiorari was granted to review the question of whether an indigent mother should be permitted to proceed *in forma pauperis* on appeal of a state court order terminating her parental rights. In other words, the petitioner there utilized the Supreme Court's discretionary exercise of jurisdiction to entertain appeals of final state court orders. *See* 28 U.S.C. § 1257. As explained, petitioner's counsel has wholly failed to establish that this court has habeas jurisdiction here.

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The "custody" requirement is jurisdictional, i.e. the federal courts have no authority to entertain a petition for a writ of habeas corpus on behalf of someone who is not subject to some sort of state-imposed restraint. *Carafas v. LaValle*, 391 U.S. 234, 238 (1968) (where habeas petitioner was released from prison while his habeas petition was pending in federal court, the issue was "not mootness in the technical or constitutional sense, but whether the statute defining the habeas corpus jurisdiction of the federal judiciary in respect of person in state custody is available here."); *Jones v. Cunningham*, 371 U.S. 236, 238 (1963) (the habeas corpus jurisdictional statute implements the constitutional command that habeas corpus be made available, but limits that availability to those "in custody"); *Maleng v. Cook*, 490 U.S. 488, 492-494 (1989) (a conviction for which petitioner has served his entire term and been discharged, but which later is used to enhance the sentence on a new conviction is not "custody" for subject matter jurisdiction under § 2254).

It is important to note that although Congress and the federal courts have over the years expanded the reach of federal habeas corpus, the writ has never been deemed "a generally available federal remedy for every violation of federal rights." *Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 510 (1982). It is a remedy "whose operation is to a large extent uninhibited by traditional rules of finality and federalism," and therefore is "limited to cases of special urgency . . . ." *Hensley v. Municipal Court, San Jose Milpitas Judicial Disrict*, 411 U.S. 345, 351 (1973) (habeas petitioner who had been convicted of a crime was "in custody" for purposes of habeas statute even though he was out on his own recognizance). Petitions under 28 U.S.C. § 2254 involve "challenges to state-court judgments in situations where-as a result of a state-court criminal conviction-a petitioner has suffered substantial restraints not shared by the public generally." *Lehman*, 458 U.S. at 510. No such situation is presented in this child custody dispute.

5

1  Courts consider three factors to determine whether habeas relief is appropriate. The
2 primary consideration is whether the petitioner "is subject to restraints not shared by the public
3 generally." *Hensley*, 411 U.S. at 351. The restraint must be more than "a speculative possibility
4 that depends on a number of contingencies over which [the petitioner] has no control." *Id.*, at
5 351-52. The court must also consider whether the federal court's exercise of its habeas corpus
6 jurisdiction would "interfere with any significant interest of the State." *Id.*, at 352. The United
7 States Supreme Court has, in light of these considerations, rejected the notion that a child who,
8 by operation of a state court's order, is placed in foster care is effectively in "custody" for
9 purposes of section 2254. *Lehman*, 458 U.S. at 516. Very plainly, disputes over child custody
10 such as this are not cognizable as a grounds for habeas relief under § 2254.

11  The reasoning in *Lehman* has even greater application here. The minor child, ZM, is not
12 even alleged to be in foster care. Rather, pursuant to a the order of a California court, she is in
13 the custody of her mother and subject to unsupervised visitation with her father. The court finds
14 that this order is wholly inadequate for finding that ZM is in "custody" for purposes of federal
15 habeas jurisdiction. The most obvious problem with petitioner's argument is that ZM is not a
16 prisoner in any sense of the word. She does not "suffer any restrictions imposed by a state
17 criminal justice system." *Lehman*, 458 U.S. at 510. She is not subject to any conditions or
18 restraints, the penalty for disobedience thereto would be arrest and re-imprisonment, and
19 possible criminal prosecution. *Compare*, *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963)
20 (parolee who must obey certain conditions knowing that one transgression will result in arrest
21 and re-incarcerated is in custody for purposes of 28 U.S.C. § 2254). While her mother has legal
22 "custody" over her and her father is entitled to visit with her, the situation ZM finds herself in
23 "differs little from the situation of other children in the public generally . . . ." *Lehman*, 458 U.S.
24 at 511. Countless children of divorced parents live with virtually indistinguishable
25 arrangements. Furthermore, California's "interest in finality is unusually strong in child-custody
26 disputes." *Id.*, 458 U.S. at 513. Child custody agreements require certainty and predictability if

they are to benefit the children to which they pertain. "Extended uncertainty would be inevitable in many cases if federal courts had jurisdiction to relitigate state custody decisions." *Id.*, at 514. The record in this case demonstrates that California law permits the parties involved in court-ordered child custody arrangements to seek modification thereof.

Moreover, California law provides that state "[h]abeas corpus may be used in various types of child custody matters," *In re Paul W.*, 60 Cal.Rptr. 3d 329, 339 (Cal. App. 2007), including "when a person entitled to custody of a minor child is denied possession thereof," *In re Barr*, 39 Cal.2d 25, 27 (1952), or when a parent seeks to challenge an order terminating parental rights. *In re Carrie M.*, 108 Cal.Rptr.2d 856, 859 (2001). Referencing the discussion in a case decided by the U.S. Court of Appeals for the First Circuit, the United States Supreme Court has explained why this fact is inapposite in any discussion about whether the federal courts should exercise their habeas jurisdiction in such matters:

> State utilization of habeas to test the legal custody of a child is part of the fabric of its reserved jurisdiction over child custody matters. If a habeas remedy were not provided, some other procedure would be needed to effectuate the state's substantive interest in these relationships. It is purely a matter of procedural detail whether the remedy is called 'habeas' or something else. *The federal government, however, has no parallel substantive interest in child custody matters that federal habeas would serve.* The sole federal interest is in the constitutional issues collateral to such disputes.

*Lehman*, 458 U.S. at 515 (citation omitted) (emphasis added). California's interest in resolving these matters without federal interference is, quite simply, a well-established matter of federal-state relations. Here, there is no question about whether California has deprived any individual of liberty in violation of any federal law or treaty, or in violation of the Constitution. It plainly has not. The only question is whether ZM's mother and father agree with the trial and appellate court decisions. Clearly, the mother does not. However, the appellate court in no uncertain terms informed her that any disagreement she has is not well-founded in law. Her appeal was dismissed as frivolous and her lawyer was sanctioned for pursuing a frivolous appeal. Not only is this federal court the inappropriate forum to review that ruling, it cannot remedy petitioners

alleged claims with a federal writ of habeas corpus.

Indeed, as discussed further below, it is no small irony that petitioners risk additional sanctions here under Rule 11, Fed. R. Civ. P. Insofar as petitioners assert that a state court's finding of contempt and imposition of fines is a restraint on liberty amounting to "custody," the proposition is patently frivolous.

### B. The *Rooker-Feldman* Bar

Petitioner's claims are barred for an additional reason. Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). A court faced with what amounts to a forbidden *de facto* appeal from a state court judgment "must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158. The hallmarks of a *de facto* appeal are that a disappointed state litigant files suit in a federal district court naming as defendant the state court, alleging as a legal wrong that the state court decision was erroneous and seeking an injunction against its enforcement. *Id.*, at 1161. These are precisely the characteristics of the petition here.

It is not that the Constitution forbids the federal courts from reviewing the judgments of state courts. That clearly is not the case, since federal courts may via habeas corpus examine the judgment of a state court pursuant to which the petitioner is in custody and may in other very limited contexts such as bankruptcy proceedings vacate and set aside state court judgments. *See Doe v. Mann*, 415 F.3d 1038, 1043 (9th Cir. 2005). Rather, it is that "federal district courts are courts of original, not appellate jurisdiction." *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000). No federal statute gives the federal district courts authority to entertain challenges to state court judgments and orders in child custody disputes between the parents. *See Confederated Tribes v. Superior Court*, 945 F.2d 1138, 1140, n.3 (9th Cir. 1991) (noting that even under the Indian Child Welfare Act, federal district courts lack jurisdiction over ongoing child custody disputes

8

between tribal parents). Neither do they have the authority to entertain challenges to state court orders imposing a fine. *See Partington v. Gedan*, 961 F.2d 852, 864-65 (9th Cir. 1992) (*Rooker-Feldman* doctrine barred federal district court's review of Hawaii Supreme court's decision to sanction and fine plaintiff for violating the court's rules concerning the filing of motions). Finally, the doctrine applies when a plaintiff in federal court claims that court was without jurisdiction to render the judgment at issue. *See Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 936 (9th Cir. 1998) (federal court could not entertain challenge to determinations by state regulatory board and state court that under state law, they had jurisdiction over Olson Farms).

Here, the court has no difficulty in finding that the court lacks jurisdiction. Petitioner names the Third District Court of Appeals as a respondent, and complains its order subjected him to cruel and unusual punishment, that the court acted in excess of its jurisdiction by holding him in contempt of court, and denied ZM access to the courts to redress her grievance about having unsupervised visitation with her father. Petitioners attribute their alleged legal harms to the state appellate court's order. They seek equitable relief, i.e., an order directing the Third District Court of Appeals to explain its actions and directing the State Bar of California not to take action to ensure that he pays the fines imposed. Any such orders strike directly at the California court's authority and ability to enforce its orders. Ultimately, petitioner wants this court to "'undo' a prior state court judgment, which is another way of presenting a federal district court with a de facto appeal that bars subject-matter jurisdiction under the *Rooker-Feldman* doctrine." *Doe v. Mann*, 415 Fed. 3d 1038, 1042 (9th Cir. 2005). Insofar as petitioners seek direct review of the appellate court's order, this action must be dismissed.

**C. Rule 11 Sanctions**

The reasons that this court lacks jurisdiction are obvious, even to a minimally competent lawyer who has made a good faith effort to comply with Rule 11 of the Federal Rules of Civil Procedure.

////

9

Rule 11 provides that:

> (b) By presenting to the court a pleading . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:
>
> > (2) he claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(2). It also provides for the imposition of sanctions against an attorney or party responsible for violations of the rule. Fed. R. Civ. P. 11(c). Obviously, the filing of a patently frivolous habeas petition violates the rule. Courts must be objective in determining whether a motion or pleading is frivolous. Thus, "[i]f, judged by an objective standard, a reasonable basis for the position exists both in law and in fact at the time the position is adopted, then sanctions should not be imposed." *Golden Eagle Dist. Corp. v. Burroughts Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). It is crucial to bear in mind that, "The key question in assessing frivolousness is whether a complaint states an arguable claim-not whether the pleader is correct in his perception of the law." *Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989).

Here, the very foundation of counsel's position is wholly unsupported by law. It cannot be a novel proposition that in order to commence a habeas action in federal court, a habeas petitioner must allege grounds establishing jurisdiction. The federal courts are not in the business of searching for some basis upon which to exercise their authority once an action is commenced. The controlling authority and reasoning discussed above manifestly demonstrate that this court lacks jurisdiction to entertain this petition and those authorities should be obvious to any minimally competent attorney. Moreover, upon even a cursory reading of either 28 U.S.C. § 2241 or 28 U.S.C. § 2254 it is apparent that a federal court can entertain a habeas petition only on behalf of a person who is in "custody."[4] Similarly troubling is that petitioners

---

[4] The pertinent portion of § 2241 states: "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the

10

rely upon wholly inapposite cases and controlling authorities have not been cited at all. Furthermore, it does not appear that counsel made a good faith argument that the law reasonably could be extended to support his position. In fact, this court's research demonstrates that the law regarding custody for habeas corpus jurisdiction and for the *Rooker-Feldman* doctrine squarely precluded any such argument. For this reason, the court finds that given the facts of this case, there was no reasonable basis for the position that this court has jurisdiction to entertain the petition Lynch filed.

    The court is mindful that prior to a *sua sponte* imposition of sanctions under Rule 11, the court must find that counsel's conduct was particularly egregious, i.e., "akin to a contempt of court." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 2001). In a generic sense, "contempt" is the refusal to obey a court's order entered to benefit a party. *See Bingman v. Ward*, 100 F.3d 653, 655 (9th Cir. 1996). This determination cannot be made without some consideration of the fact that counsel has already been sanctioned in the state appellate court for persisting in a frivolous appeal and this federal court filing only compounds that inappropriate conduct. The court is also mindful that any imposition of sanctions should follow notice to the responsible party. Counsel for petitioners, Lynch, is expressly put on notice that the conduct here of filing a patently baseless habeas petition appears to satisfy the "egregious" standard.

    It must also be noted that it is in the nature of habeas corpus that the clerk of the court must "promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it," to determine whether to order a response or summarily to dismiss it. Rule 4, Rules Governing Section 2254 Cases. In other words, it is federal policy that federal habeas petitions are a priority, and that "it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Notes to Rule 4. Given the extremely heavy

---

United States . . . ." 28 U.S.C. § 2241(c)(3). The relevant portion of § 2254 are quoted above in the body of these findings and recommendations.

caseload of prisoner habeas petitions pending in this district, any bad faith or frivolous habeas petition consumes scarce judicial resources. Any frivolous filing therefore directly burdens the court at the expense of other litigants and does so, quite literally, at the expense of the taxpayers. Accordingly, Lynch is expressly admonished to read carefully Rule 11 and the Ninth Circuit cases applying it before proceeding further with this patently meritless habeas petition. Future violations of Rule 11 will not be countenanced.

For the reasons stated above, it is RECOMMENDED that this action be dismissed for lack of subject matter jurisdiction.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 15 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 14, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE